IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| CYNTHIA LATOYA WRIGHT, | ) | C/A No. 2:14-cv-01999-TLW-MGB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

      This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B). The Plaintiff, Cynthia Latoya Wright, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

      The Plaintiff applied for DIB on September 30, 2011, and was 31 years old on her alleged disability onset date of September 27, 2011. (R. 204.) The Plaintiff claims disability due to peripheral vascular disease and arthritis in the knee. (R. 255.) The Plaintiff obtained a high school certificate because she was unable to pass graduations tests to receive a diploma. (R. 40.) She last worked in Ocober, 2011, as packer at SoPakCo, a meat packing plant. (R. at 43-44.) Following her employment at SoPakCo, she applied for jobs cleaning hotels and waiting tables at

1

restaurants. (R. 43.) The Plaintiff received unemployment benefits through the end of 2012. (R. 42; 215-221.)

The Plaintiff's application for DIB was denied initially and on reconsideration. (R. at 128; 138.) At the Plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on August 13, 2011. (R. at 18.) In a decision dated October 18, 2013, the ALJ found that Plaintiff was not disabled. (R. 18-27.) The Plaintiff appealed the decision to the Appeals Council ("AC"), who affirmed the ALJ's decision, making it the Commissioner's final decision for purposes of judicial review. (R. 1.)

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)   The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> (2)   The claimant has not engaged in substantial gainful activity since September 27, 2011, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> (3)   The claimant has the following severe impairments: right knee arthrosis with status post arthroscopic surgery with retinacular release; left shoulder dyesthesias; degenerative disc disease; diabetic mellitus with neuropathy; peripheral vascular disease; and obesity  (20 CFR 404.1520(c)).
>
> (4)   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5)   After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with lifting and carrying 20 pounds occasionally and 10 pounds frequently; stand and/or walk 2 hours in an 8 hour workday; no climbing of ladders, ropes, or scaffolds, crawling, crouching and kneeling; no more than occasional stooping, balancing or climbing stairs and ramps; no use of right lower extremity controls; no more than occasional use of left lower extremity controls; no concentrated exposure to extremes of cold temperatures; no required exposure to hazards

such as unprotected heights and vibration; and no more than occasional exposure to dangerous machinery with exposed moving parts.

(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565).

(7) The claimant was born on October 12, 1979 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from September 27, 2011, through the date of this decision (20 CFR 404.1520(g)).

(R. 18-27.)

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. See 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. See 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. See 20 C.F.R. § 404.1520(a)(4); see also Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). She must make a *prima facie* showing of disability by showing that she is unable to return to his past relevant work. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. See Grant, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. See id. at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

1. The ALJ's Analysis of Step Two of the Sequential Process

Substantial evidence in the record supports the ALJ's exclusion of the Plaintiff's hip impairment as a severe impairment at Step Two of the sequential process. A severe impairment is one that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A non-severe impairment is defined as one that "does not

significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. § 404.1508. The Plaintiff has the burden to prove that she suffers from a severe impairment. Bowen v. Yuckert, 482 U.S. 137, 145 n.5 (1987).

The ALJ found that the Plaintiff alleged she suffered from hip pain.  (R. 20.)  The ALJ discussed the objective evidence of the Plaintiff's hip impairment noting the x-rays of the hip showed no acute fracture or displacement.  (Id.)  The x-ray did reveal old pinning of the head of the femur that was performed when the Plaintiff was a child.  (R. 20; 518.)

The Plaintiff argues the ALJ's finding regarding the Plaintiff's hip is not supported by substantial evidence by citing two pieces of evidence in the record.  (Dkt. No. 16 at 9-11.)  The Plaintiff cites to the treatment notes of Ralph E. Carter, III, M.D., from February 1, 2010 and May 24, 2010.  (Dkt. No. 16 at 9-10; R. 355; 356-57.)  Dr. Carter referenced "some secondary effects of reduced hip motion." (R. 355.)  This is the fourth of four "impressions" found by Dr. Carter with the first two relating to her knee pain and the arthritis in her knee and the third noting the pins in her hip.  (Id.)  In the records cited by the Plaintiff, Dr. Carter stated "she is not facing imminent hip replacement, but may in the distant future."  (R. 358.)  Regarding her ability to work, Dr. Carter stated "[i]t is not going to be easy to modify her work demands and we wouldn't ask her to do that.  Good shock absorbing shoes would be helpful. [sic] As well as watching the way she stands and walks."  (R. 358.)  Dr. Carter's assessment of her impairments and work included all of her impairments at that time, not just her hip.  Clearly his assessment

6

does not support that the condition of the Plaintiff's hip constituted a severe impairment. The other evidence cited by the Plaintiff, the residual functional capacity ("RFC") assessment conducted by William Linder, M.D., is merely a reference to Dr. Carter's notes and assessment and provides no independent evidence to support the Plaintiff's argument. (Dkt. No. 16 at 10-11; R. 88.) The ALJ's analysis of the objective evidence regarding the Plaintiff's hip provides substantial evidence to support her Step Two analysis of the Plaintiff's severe impairments.

   2. The ALJ's Consideration of the Plaintiff's Impairments in Combination

The ALJ considered the Plaintiff's impairments in combination as required by case law and factored the combination into her RFC assessment. Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989), requires ALJs to consider a claimant's disability in combination with each other and consider the combined effect of all of the claimant's impairments together. "The ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Id., at 50 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir.1985)).

The ALJ stated in her fourth finding that the Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 21.) In determining the Plaintiff's RFC, the ALJ thoroughly discussed the Plaintiff's medical history including the medical records, objective medical evidence, and the Plaintiff's subjective complaints concerning each of her impairments. (R. 21-25.) The ALJ considered "the entire record including clinical findings, the claimant's subjective allegations, and combined effect of all of the claimant's impairments" in assessing the Plaintiff's RFC. (R. 25.) The method employed by the ALJ of discussing each impairment and then weighing them together is proper. See Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) (holding "[a]fter separately discussing Browning's physical impairments, affective disorder, and complaints of

pain, as well as her daily level of activities, the ALJ found that her impairments do not prevent [her] from performing her past relevant work and [that] [t]o require a more elaborate articulation of the ALJ's thought processes would not be reasonable." (internal quotations omitted)).

The Plaintiff argues the ALJ improperly considered each of the Plaintiff's impairments individually and then accounted for each impairment in the Plaintiff's RFC separately from her other impairments. (Dkt. No. 16 at 11-13.) There is no evidence that the ALJ used a "one to one" method in accounting for the Plaintiff's impairments in her RFC. The RFC is largely founded on the credibility of the Plaintiff's claims regarding her impairments. (R. 24.) The ALJ noted that the Plaintiff's daily activities were "not limited to the extent one would expect, given the complaints of the disabling symptoms and limitations." (Id.) The Plaintiff took care of her husband, who was on dialysis, through July, 2013. She cooked, cleaned, and drove. (R. 23-24.) The ALJ found that when Plaintiff applied for and received unemployment compensation, the applications for unemployment compensation signed by the Plaintiff certified that "she was ready, willing and able to work." (R. 24.) The ALJ's emphasis on the Plaintiff's ability to participate in activities in her daily life weighs the Plaintiff's impairments in combination. Determining what the Plaintiff can and cannot do is the purpose of an RFC assessment. See Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir. 2011) ("[R]esidual functional capacity is the most [a claimant] can still do despite [her] limitations.") (quoting 20 C.F.R. §§ 404.1545(a)). The actual activities the Plaintiff performed everyday demonstrated her capabilities while living with all of her impairments. After reviewing the ALJ's decision as a whole, this court finds that the ALJ properly weighed the Plaintiff's impairments in combination in determining whether her impairments or combination of impairments met or medically equaled the severity of one on the listed impairments and in assessing the Plaintiff's RFC.

3.  The ALJ's Assessment of the Opinions of Joseph Acaylar, M.D.

The regulations promulgated under the Act require the ALJ to "evaluate every medical opinion [she] receive[s]." 20 C.F.R. § 404.1527. Opinion evidence must be evaluated in accordance with 20 C.F.R. § 404.1527. A treating physician's opinion should be given controlling weight under 20 C.F.R. § 404.1527(c) if the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." Id. If a treating physician's opinion is not given controlling weight, the ALJ is to consider whether the physician has examined the patient, the length of the relationship and frequency of examinations, what medical evidence supports the opinion, if the opinion is consistent with the record as a whole, if the physician is a specialist in the area the opinion concerns, and other relevant factors. See 20 C.F.R. § 404.1527(c). "Courts often accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (quoting Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001)).

Substantial evidence supports the little weight given to Dr. Joseph Acaylar's May 16, 2012 opinion by the ALJ. The ALJ assigned Dr. Acaylar's opinion little weight because it was inconsistent with treatment notes, her examinations had been "normal," her cranial nerves were intact, and she had good stability with no obvious gait disturbance. (R. 22.) The ALJ noted Dr. Acaylar's opinion was inconsistent with the Plaintiff's examination from April 16, 2013 showing

the Plaintiff was not taking her Gabapentin, a medicine used to treat neuropathy, and was in no acute pain or distress. (R. 22, 565)

The Plaintiff argues that Dr. Acaylar's opinion should have been given more weight because it is supported by objective medical evidence. (Dkt. No. 16 at 15-16.) This evidence included radiographic evidence and a reduced range of motion. (Id.) Dr. Acaylar's opinion is contained on a single-page, multiple-choice and fill-in the blank form. (R. 535.) The form does not provide any notations of the evidentiary basis of Dr. Acaylar's opinions.[1]  Review of the radiographic evidence shows that it does not support the opinion of Dr. Acaylar. The x-rays of the Plaintiff's hip taken May 3, 2012, showed the old pinning of her hip from her childhood operation but no dislocation or fracture.[2] (R. 518.) X-rays taken the same day of her spine showed degenerative disc disease but no fractures.[3]

Dr. Acaylar identified the Plaintiff's signs and symptoms by checking boxes indicating the Plaintiff had "positive straight leg raising test," "impaired sleep," and "reduced range of motion." (R. 535.) None of these symptoms gave any objective findings indicating their severity, the degree of reduced function they caused, treatability, or permanence. While Dr. Acaylar is a treating source and was a member of the same practice as the Plaintiff's previous physician, Dr. Acaylar first examined the Plaintiff 13 days before he filled out the form

---

[1] The Plaintiff's position that Dr. Acaylar's opinion is based on radiographic evidence is based on the assumption that Dr. Acaylar filled out the form with the Plaintiff's recent radiographs in mind. This assumption may be reasonable, but does serve to highlight the limitations of check-the-box medical opinions. See Shelton v. Colvin, No. 7:13-CV-00470, 2015 WL 1276903, at *13 n.6 (W.D. Va. Mar. 20, 2015); Leonard v. Astrue, No. 2:11-CV-00048, 2012 WL 4404508, at *4 (W.D. Va. Sept. 25, 2012); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("check-the-box assessments without explanatory comments are not entitled to great weight").

[2] These x-rays match the findings of x-rays taken June 19, 2013. (R. 595.)
[3] These x-rays match the findings of x-rays taken June 19, 2013. (R. 599.)

conveying his opinion.[4] (Id.) As his opinion does not provide what medical evidence he relied on in its formulation, his opinion cannot be assumed to "provide a detailed, longitudinal picture" of the Plaintiff's impairments and RFC. 20 C.F.R. § 404.1527(c)(2).

Dr. Acaylar's opinion is inconsistent with the more detailed RFC assessment conducted by the government's consulting physician William Lindler, M.D. (R. 83-90.) Dr. Lindler found that the Plaintiff could sit up to 6 hours in an eight hour day. (Id.) He additionally found she could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds. (Id.) Dr. Lindler's RFC found that the Plaintiff was capable of sustaining light work. (Id.) Substantial evidence supports the weight given to Dr. Acaylar's May 16, 2012 opinion.

4. The ALJ's Assessment of the Plaintiff's Credibility

"The determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir.1996).

> First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.... It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

Craig, 76 F.3d at 593, 595. In the case at bar, the point of contention between the parties is limited to step two during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptoms] and the extent to which it affects [her] ability to work." Id. In its step two analysis, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to

---

[4] To the extent the Plaintiff argues that Dr. Acaylar would have been familiar with the Plaintiff through his review of her previous medical history, he has the same credibility as a consulting physician who does essentially the same task.

11

make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [her] ability to work." Craig, 76 F.3d at 595.  A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers." Id.  "Objective medical evidence…is a useful indicator to assist [the ALJ] in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [a claimant's] ability to work."  20 C.F.R. § 404.1529.

In the case at bar, the ALJ's assessment that the Plaintiff's subjective complaints were not fully credible is supported by substantial evidence.  The ALJ found that the Plaintiff satisfied the first step required by Craig but that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible because they were inconsistent with objective medical evidence. (R. 23-24.)  Before discussing the objective medical evidence the ALJ relied on to assess the Plaintiff's credibility, the undersigned notes that the ALJ weighed the Plaintiff's own words and actions to assess her credibility as well.  As discussed *supra*, the ALJ found that the Plaintiff's daily activities were "not limited to the extent one would expect, given the complaints of the disabling symptoms and limitations."  (R. 24.)

12

The ALJ noted that the Plaintiff certified on her unemployment applications that "she was ready, willing and able to work." (Id.)

The objective medical evidence relied on by the ALJ included the lack of "strength deficits, circulatory compromise, neurological deficits, persisting muscle spasms, fasciculations, fibrillations, or muscle atrophy or dystrophy that are often associated with long standing, severe, or intense pain and physical inactivity." (R. 23). She also noted that "[e]mergency room records show[ed] that the claimant [had] no swelling, deformities,….cyanosis, clubbing, or edema." (Id.) The ALJ found her cranial nerves II through XII were intact. (Id.) The ALJ noted the Plaintiff had no motor or sensory deficits. (Id.) The ALJ also noted that "clinical findings fail[ed] to show that the claimant has musculoskeletal weakness, deformity,…swelling, neurological deficits, radiculopathy, or myopathy." (R. 24.)

The ALJ properly followed the two step process required by Craig to evaluate the Plaintiff's subjective complaints. Her finding that the Plaintiff was not fully credible is supported by substantial evidence comprised of the Plaintiff's own words and actions and objective medical evidence.

## RECOMMENDATION

Based on the foregoing, the undersigned concludes that the findings of the ALJ are supported by substantial evidence and RECOMMENDS that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

July 16, 2015

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE